This is a suit for damages arising out of personal injuries alleged to have been received by plaintiff while a paid passenger on defendant's bus line. After trial there was judgment rejecting plaintiff's demands, from which judgment he brings this appeal.
There is little dispute about the facts as established by the testimony in this case to the effect that plaintiff boarded a bus, owned and operated by the defendant company, at its terminal station in the city of Alexandria, Louisiana, about 8:00 P.M. on July 10, 1946, having purchased a ticket from Alexandria to Natchitoches. Shortly after leaving the terminal, within a few blocks of said point and at or about the time the bus of the defendant company had entered the traffic bridge over Red River between Alexandria and Pineville, the tire on the right front wheel of the vehicle blew out. At the time the bus was traveling at a moderate rate of speed in the neighborhood of fifteen miles per hour. The force of the blow-out caused the front end of the bus to veer to the right and brought the right front wheel into sharp contact with a wooden guard rail, constructed of heavy timbers laid lengthwise along the floor of the bridge. The driver brought the bus to a stop within a distance of approximately ten feet, but it is established that the force of the contact jarred the bus to such extent that some of the passengers were jostled or thrown about in their seats, particularly two women who were sitting on the extreme front seat on the right-hand side, and who were thrown to the floor of the bus.
Immediately after the occurrence of the accident the driver called for a doctor for the purpose of having an examination made of any passengers who might have sustained injury. The doctor arrived within a very few minutes and tendered his services for the benefit of any passengers who might have received injuries, but there is no evidence to show that plaintiff at this time claimed to have been injured, nor did he *Page 413 
report any injury on one of the so-called "witness cards" which were distributed by the bus driver with the assistance of one of the passengers, a Mr. Kennedy of Natchitoches, who was a witness in this case.
After a delay of some thirty minutes, during which time a change of tires was effected, the bus proceeded on its journey.
In his petition plaintiff alleged that the impact of the bus with the bridge caused his head to strike the top of the bus; that he was bruised all over, particularly upon his back and chest; that he had continued to suffer severe pain and disability, in consequence whereof he claimed a total of $1,975 in damages.
Plaintiff, who was the only witness in support of his claim, testified on trial of the case that he had been knocked out of his seat and rendered unconscious by the force of the collision, and that he lay in the aisle of the bus for approximately thirty minutes before recovering consciousness. It is with a sense of distinct pleasure that we call attention to the fact that plaintiff's counsel himself, in brief, with refreshing frankness, has stated to this Court his belief that his client somewhat exaggerated his testimony as to the happenings in connection with the accident, as well as his condition. We feel that "exaggeration" is by far the kindest word that can be used with reference to an evaluation of plaintiff's testimony.
[1] Readily conceding the high degree of care due by a common carrier toward its passengers, defendant contends that there was no breach of its duty in this respect inasmuch as the tire blow-out resulted from a latent defect not discoverable upon inspection and, secondarily, that, as a matter of fact, plaintiff suffered no injury.
The bus involved in this accident was engaged on the return journey of a round trip between Shreveport and New Orleans. It is established that the blow-out resulted from a cut in the tread of the tire which is not shown to have been so apparent as to make it easily discoverable either upon a casual or thorough inspection. The tire itself was comparatively new, having sustained, according to the best testimony on the point, only about 15% tread wear and having been run for only about 12,500 miles, a distance estimated to have been something less than 30% of the average service.
It is true that defendant did not produce a witness who had made a thorough inspection of the tires of this particular bus, but it did satisfactorily establish, through the testimony of competent witnesses, its usual custom and method of making these inspections. It appears that a thorough inspection of tires on defendant's busses was customarily made before the beginning of each round trip. In addition, the driver of the bus was required to make routine inspections on the occasions of stops along the route. The driver of the bus in this instance testified that he had made a casual inspection of the tires in the terminal station at Alexandria, and had observed no evidence of any serious defect.
We find nothing in this case which would justify a conclusion that defendant was guilty of any act either of commission or omission of such nature as would render it liable.
In view of this finding we deem it unnecessary to embark upon a discussion with respect to plaintiff's alleged injuries and refrain from comment upon his "exaggerated" testimony in this connection.
[2, 3] A motion to remand this cause to the lower Court for the purpose of retrial has been filed in this Court on behalf of plaintiff. The motion is based upon the ground that plaintiff has discovered the identity of two individuals who were passengers on the bus at the time of the accident, and that he desires to avail himself of the benefit of the testimony of these newly discovered witnesses.
No indication is given in the motion to remand as to the nature or character of the testimony which might be expected to be given by the witnesses in question, and, in fact, there is no averment to the effect that these persons were in possession of any pertinent, relevant or material information bearing upon the claim asserted by this plaintiff.
We think it would be both unreasonable and confusing to establish a precedent justifying the remanding of cases for retrial upon the sole ground that additional witnesses have been discovered. The inevitable *Page 414 
result would be to delay beyond all reason a definitive pronouncement in litigated matters. It is the function of appellate courts to pronounce judgment in all cases where the record as made up admits of such definitive action. In the absence of any adequate showing indicating the real danger of a miscarriage of justice, there is no ground for the action requested in this instance. Accordingly, the motion to remand is disallowed.
For the reasons set forth, the judgment appealed from is affirmed at appellant's cost.
KENNON, J., absent.